## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
STEVEN LEO DUQUETTE           :      Civ. No. 3:19CV00526(SALM)
                              :
v.                            :
                              :
ANDREW M. SAUL,               :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION[1]             :      May 31, 2020
                              :
------------------------------x
```

### <u>RULING ON CROSS MOTIONS</u>

Plaintiff, Steven Leo Duquette, brings this appeal pursuant to §205(g) of the Social Security Act ("the Act"), as amended, seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Supplemental Security Income ("SSI"). Plaintiff has moved for an order reversing the decision of the Commissioner, or in the alternative, for remand. [Doc. #12]. Defendant has filed a motion for an order affirming the decision of the Commissioner. [Doc. #13]. Plaintiff submitted a statement of material facts with his motion to reverse or remand, which has been adopted by the Commissioner, with the addition of certain supplemental facts. <u>See</u> Docs. #12-1; #13-2.

---

[1] Andrew M. Saul was confirmed as Commissioner of the Social Security Administration on June 4, 2019. He is now the proper defendant. <u>See</u> Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g). The Clerk of the Court is directed to update the docket accordingly.

For the reasons set forth below, plaintiff's Motion to Reverse or Remand **[Doc. #12]** is **DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #13]** is **GRANTED**.

I.   <u>**PROCEDURAL HISTORY**</u>

Plaintiff filed an application for SSI on February 11, 2015,[2] alleging disability beginning October 1, 2005. <u>See</u> Certified Transcript of the Administrative Record, Doc. #10 and attachments, compiled on May 17, 2019, (hereinafter "Tr.") at 192-99. His claim was denied initially on July 9, 2015, <u>see</u> Tr. 79, and upon reconsideration on September 8, 2016, <u>see</u> Tr. 102, Tr. 126-28. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on October 21, 2016. <u>See</u> Tr. 129-31.

On March 29, 2018, ALJ Tanya J. Garrian held a hearing at which plaintiff appeared and testified. <u>See</u> Tr. 45-68. The ALJ "presided over the hearing from Providence, RI[,]" Tr. 20, by video, while plaintiff "appeared in person[,]" Tr. 47, in New Haven, Connecticut. Plaintiff was represented at the hearing by Attorney John P. Spilka. <u>See</u> Tr. 45. Vocational Expert ("VE")

---

[2] The ALJ's decision reports the application date as January 29, 2015, <u>see</u> Tr. 20, but the application summary uses the date February 11, 2015, <u>see</u> Tr. 192. Because this discrepancy does not affect the Court's decision, the Court does not address it herein.

James D. Sarno also testified by telephone. <u>See</u> Tr. 45, Tr. 64-
67. On April 25, 2018, the ALJ issued an unfavorable decision,
denying plaintiff's application for benefits. <u>See</u> Tr. 17-33.
Plaintiff filed a timely request for review of the ALJ's
decision on May 31, 2018. <u>See</u> Tr. 189-91. On February 8, 2019,
the Appeals Council denied review, thereby rendering the ALJ's
April 25, 2018, decision the final decision of the Commissioner.
<u>See</u> Tr. 1-4. Plaintiff timely filed this action on April 9,
2019. <u>See</u> Doc. #1. The case is now ripe for review under 42
U.S.C. §405(g).

## II.  <u>STANDARD OF REVIEW</u>

The review of a Social Security disability determination
involves two levels of inquiry. <u>First</u>, the Court must decide
whether the Commissioner applied the correct legal principles in
making the determination. <u>Second</u>, the Court must decide whether
the determination is supported by substantial evidence. <u>See</u>
<u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998). Substantial
evidence is evidence that a reasonable mind would accept as
adequate to support a conclusion; it is more than a "mere
scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)
(quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229
(1938)). The reviewing court's responsibility is to ensure that
a claim has been fairly evaluated by the ALJ. <u>See</u> <u>Grey v.</u>
<u>Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983).

3

The Court does not reach the second stage of review –
evaluating whether substantial evidence supports the ALJ's
conclusion – if the Court determines that the ALJ failed to
apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d
33, 70 (S.D.N.Y. 2012) ("The Court first reviews the
Commissioner's decision for compliance with the correct legal
standards; only then does it determine whether the
Commissioner's conclusions were supported by substantial
evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773–74 (2d
Cir. 1999))). "Where there is a reasonable basis for doubt
whether the ALJ applied correct legal principles, application of
the substantial evidence standard to uphold a finding of no
disability creates an unacceptable risk that a claimant will be
deprived of the right to have her disability determination made
according to the correct legal principles." Johnson v. Bowen,
817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set
forth with sufficient specificity to enable [a reviewing court]
to decide whether the determination is supported by substantial
evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)
(alterations added) (citing Treadwell v. Schweiker, 698 F.2d
137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject
the testimony of any witness, but a "finding that the witness is
not credible must nevertheless be set forth with sufficient

4

specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 92CV04113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)).

Finally, some of the Regulations that may be cited in this decision were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." Smith v. Comm'r, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was

filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" <u>Rodriguez v. Colvin</u>, No. 3:15CV01723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); <u>White v. Comm'r</u>, No. 17CV04524(JS), 2018 WL 4783974, at *4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." (citation omitted)).

## III. **SSA LEGAL STANDARD**

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.

§423(d)(2)(A); 20 C.F.R. §416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of

proof as to the first four steps, while the Secretary must prove the final one. Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). The residual functional capacity ("RFC") is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.  <u>THE ALJ'S DECISION</u>

Following the above-described evaluation process, the ALJ concluded that plaintiff was not disabled under the Act. See Tr. 33. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date of January 29, 2015. See Tr. 22. At step two, the ALJ found that plaintiff had the severe impairments of "depression, anxiety and substance abuse disorders[.]" Tr. 22. The ALJ evaluated plaintiff's "hypertension, hepatitis C, chronic, obesity, hyperlipidemia, and insomnia[,]" and found that none of those conditions "resulted in any significant secondary functional limitations." Tr. 23. The ALJ noted that "[t]he claimant made no assertions at the hearing that these impairments caused work related limitations." Tr. 23. The ALJ also found that neither plaintiff's alleged left shoulder nor left hip injury was a "medically determinable impairment[.]" Tr. 23.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 23-25. The ALJ specifically considered Listing 12.04 (Depressive, Bipolar and Related Disorders) and Listing 12.06 (Anxiety and Obsessive-compulsive disorders). See Tr. 23-25.

9

Before moving on to step four, the ALJ found plaintiff had the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, routine tasks assuming normal work breaks over an eight-hour day. The claimant should not interact with the public and he is limited to only occasional superficial contact with supervisors and coworkers.

Tr. 25.

At step four, the ALJ concluded that plaintiff is capable of performing his past work as a laborer. See Tr. 31. At step five, in the alternative, and after considering the testimony of the VE, as well as plaintiff's age, education, work experience, and RFC, the ALJ found that "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform[.]" Tr. 32.

## V.   <u>DISCUSSION</u>

Plaintiff contends the ALJ erred in the following ways:

- The ALJ erred in the weighing of the opinion evidence. <u>See</u> Doc. #12-2 at 3-14.

- The ALJ erred in her RFC determination. <u>See</u> Doc. #12-2 at 14-15.

- The ALJ failed to properly evaluate plaintiff's subjective complaints. <u>See</u> Doc. #12-2 at 15-20.

10

- The ALJ erred when she determined that plaintiff could perform his past relevant work or, in the alternative, other work in the economy. <u>See</u> Doc. #12-2 at 21-22.

**A. The ALJ's Weighing of Opinion Evidence**

The Court first considers plaintiff's arguments related to the ALJ's weighing of the opinions in the record.

When weighing any "medical opinion," which is defined as a statement from "an acceptable medical source[]," including a treating physician, an ALJ considers the following factors: (1) whether the medical source examined the claimant; (2) the length, nature and extent of the treatment relationship, including the frequency of examination; (3) the relevant evidence used to support the opinion; (4) the consistency of the opinion with the entire record; (5) the expertise and specialized knowledge of the source; and (6) other factors that may be germane. <u>See</u> 20 C.F.R. §416.927(c); Social Security Ruling ("SSR") 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996); SSR 06-03P, 2006 WL 2329939, at *3-4 (S.S.A. Aug. 9, 2006). The Second Circuit does not, however, require a "slavish recitation of each and every factor [of 20 C.F.R. §416.927(c)] where the ALJ's reasoning and adherence to the regulation are clear." <u>Atwater v. Astrue</u>, 512 F. App'x 67, 70 (2d Cir. 2013) (citing <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31-32 (2d Cir. 2004) (<u>per</u> <u>curiam</u>)). When evaluating opinions "from medical sources

11

who are not acceptable medical sources and from nonmedical sources" the same factors are considered, but "not every factor ... will apply in every case[.]" 20 C.F.R. §416.927(f)(1).

The opinions of a claimant's treating physicians receive special consideration.

> "The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant," Green-Younger, 335 F.3d at 106. According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. §404.1527(d)(2); see, e.g., Green-Younger, 335 F.3d at 106; Shaw, 221 F.3d at 134.

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); see also 20 C.F.R. §416.927(c). If the opinion, however, is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques[,]" then the opinion cannot be entitled to controlling weight. 20 C.F.R. §416.927(c)(2).[3]

Plaintiff alleges that "the ALJ committed error weighing the opinions of the treating sources and did not give good reasons in assessing their opinions." Doc. #12-2 at 3. Plaintiff

---

[3] Plaintiff notes that new regulations govern this issue "[a]s of March 27, 2017[.]" Doc. #12-2 at 3. As previously noted, these new regulations apply only to claims filed on or after that date. See Smith, 731 F. App'x at 30 n.1. Plaintiff's claim was filed in 2015, and thus the new regulations do not apply here. The Court therefore applies 20 C.F.R. §416.927.

also asserts that the ALJ gave improper weight to the state
agency consulting psychologist's opinion. See Doc. #12-2 at 3.
Defendant responds to this argument in the section of his brief
regarding the ALJ's RFC determination, arguing that the ALJ
afforded proper weight to the opinions in the record. See Doc.
#13-1 at 7-13.

i.   *Suzanne Spinella-Curto, LCSW*

The record contains a mental residual functional capacity
("MRFC") assessment from Ms. Spinella-Curto, a Licensed Clinical
Social Worker ("LCSW"). See Tr. 684-97. AN LCSW is not an
"acceptable medical source" under the regulations. See Duprey v.
Berryhill, No. 3:17CV00607(SALM), 2018 WL 1871451, at *5 (D.
Conn. Apr. 19, 2018). The ALJ gave Ms. Spinella-Curto's opinion,
submitted "in the form of a questionnaire regarding the severity
of the claimant's mental impairment and mental and physical
secondary functional limitations[,]" Tr. 29, no evidentiary
weight. See Tr. 31. The ALJ observed: "One section of the forms,
signed by Ms. Spinella-Curto are dated March 2, 2018." Tr. 29
(sic). However, "[a] significant portion of the questionnaire
submitted by Ms. Spinella-Curto is not completed. Instead, it
refers to an unsigned and undated second set of documents." Tr.
29.

Plaintiff asserts that the ALJ erred "by not weighing the
pertinent factors that she should have considered in assessing

the opinion of a Ms. Spinella-Curto, even though she was not an acceptable medical source." Doc. #12-2 at 10 (sic) (citing 20 C.F.R. §416.927(c)).[4] Plaintiff does not appear to object to <u>how the factors were applied</u> when the ALJ evaluated Ms. Spinella-Curto's opinion, but rather argues that <u>certain factors were not considered at all</u>.

The Court disagrees with plaintiff's contention that the ALJ failed to adequately consider the factors listed in 20 C.F.R. §416.927(c).

In deciding to assign no weight to Ms. Spinella-Curto's opinion, the ALJ focused on two factors.

<u>First</u>, 20 C.F.R. §416.927(c)(3) provides that the better explanation a source provides for her opinion, "the more weight [the ALJ] will give that medical opinion." The ALJ found the explanation lacking, noting Ms. Spinella-Curto's failure to provide "function-by-function work-related limitations." Tr. 31. The MRFC questionnaire that Ms. Spinella-Curto submitted was a mere five pages, but part of page one, and all of pages three and four, were not completed. <u>See</u> Tr. 684-88. The unanswered portions of the questionnaire sought information regarding

---

[4] The Court notes that plaintiff's arguments regarding the alleged errors committed by the ALJ when weighing the opinion of Ms. Spinella-Curto repeat almost verbatim the arguments plaintiff made to the Appeals Council in support of his request for review. <u>See</u> Tr. 277-78. As discussed in the procedural history, the Appeals Council denied review. <u>See</u> Tr. 1-4.

plaintiff's functional abilities. See Tr. 684; Tr. 686-87. In these spaces, Ms. Spinella-Curto provided no information, referring the reader to a "form sent to Colonial Cooperative[.]" Tr. 684.[5] Ms. Spinella-Curto's failure to fully complete the questionnaire leaves it lacking any meaningful explanation, and limits the utility of her opinion. See 20 C.F.R. §416.927(c)(3).

Second, 20 C.F.R. 416.927(c)(4) states that "the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." The ALJ considered this factor, finding that Ms. Spinella-Curto's "statements are not wholly consistent with the medical evidence or her own treatment records." Tr. 31. The ALJ's decision includes an extensive discussion of the various opinions and evidence in the record. See Tr. 25-29. The ALJ considered the

---

[5] Plaintiff contends that the "Colonial Cooperative" form is reflected at Tr. 696. See Doc. #12-2 at 4. The document at Tr. 696 is one page of a form that appears at Tr. 692-97. This form is unsigned and undated, although someone has written on it: "Please be sure to date report." Tr. 697. A signed copy of the same form, dated February 8, 2018, was provided to the Appeals Council. See Tr. 2 (Appeals Council letter indicating the form was received); Tr. 39-44 (signed version of form). The signed version was not before the ALJ. No explanation is provided as to why a document purportedly signed on February 8, 2018, was attached in unsigned form to an opinion dated March 2, 2018. It is also notable that the form indicates that plaintiff, who claims no physical disability, can never stand, never lift more than 20 pounds, and never drive. See Tr. 694-95. Ms. Spinella-Curto, as a social worker, would have no reason to opine on those matters, and such restrictions lack any credibility. The ALJ did not err by declining to incorporate the unsigned form into Ms. Spinella-Curto's opinion.

entire record and found that that Ms. Spinella-Curto's opinion
was not consistent with it.[6] In particular, the ALJ reviewed in
detail Ms. Spinella-Curto's own treatment notes, which are
inconsistent with the extreme limitations described in her
questionnaire. See Tr. 28 (reviewing and citing notes).

The ALJ's ruling also sufficiently addressed the other
factors listed in 20 C.F.R. §416.927(c). See Tr. 28 (length of
the treating relationship "from August 2016 through the
present"); Tr. 28 (frequency of examination illustrated by
citation to specific records of sessions and describing "weekly
therapy"); Tr. 28 (nature and extent of the relationship between
Ms. Spinella-Curto and plaintiff illustrated by indication he
"treated regularly" with her, in "ongoing therapy"); Tr. 31
(observing that Ms. Spinella-Curto's specialization did not
qualify her to assess plaintiff's physical capabilities).
Therefore, the Court finds that the ALJ appropriately considered

---

[6] Plaintiff relies on the unpublished decision in White v.
Berryhill, No. 3:17CV01310(JCH), 2018 WL 2926284, at *1 (D.
Conn. June 11, 2018), in support of his argument. The Court does
not find White persuasive in this case. First, the source at
issue in White was, unlike Ms. Spinella-Curto, an acceptable
medical source, altering the analysis in several ways. See
White, 2018 WL 2926284, at *3. Second, the White Court found
that the records cited by the ALJ as inconsistent with the
medical opinion were in fact consistent with it. See id. at 4.
Here, the ALJ's rationale is clear from her ruling, and the
Court finds no substantive error in the ALJ's conclusion that
Ms. Spinella-Curto's opinion is inconsistent with the record as
a whole.

the factors described in 20 C.F.R. §416.927(c) when evaluating the opinion of Ms. Spinella-Curto.

For the reasons discussed, the ALJ did not err by assigning Ms. Spinella-Curto's opinion no evidentiary weight.

*ii.  Simon Ovanessian, M.D.*

The ALJ "afford[ed] little evidentiary weight to the medical source statement completed by Simon Ovanessian, [plaintiff's treating physician], on March 3, 2015." Tr. 30. Plaintiff argues that the ALJ failed to properly weigh and assess Dr. Ovanessian's opinion under the Treating Physician Rule. See Doc. #12-2 at 10-12.

 "[E]ven when a treating physician's opinion is not given 'controlling' weight, the regulations require the ALJ to consider several factors in determining how much weight it should receive." Burgess, 537 F.3d at 129; see also 20 C.F.R. §416.927(c) (listing factors). "After considering [those] factors, the ALJ must comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." Burgess, 537 F.3d at 129 (citations and quotation marks omitted).

Plaintiff asserts that the ALJ "failed to assess the opinion of Dr. Ovanessian in accordance with pertinent law by not discussing all the pertinent factors." Doc. #12-2 at 11. Specifically, plaintiff asserts that the ALJ failed to address

17

the following factors: "the length and nature of Dr.
Ovanessian's treatment relationship with the plaintiff[,]" and
Dr. Ovanessian's specialization "in behavioral health
treatment." Doc. #12-2 at 12.

Contrary to plaintiff's assertion, the ALJ did discuss the
factors set forth in 20 C.F.R. §416.927(c)(2)(i) and (ii), that
is, the length and nature of Dr. Ovanessian's treatment
relationship with plaintiff. As to length, the ALJ noted that
"Dr. Ovanessian initially evaluated the claimant in June 2013."
Tr. 26. The ALJ explained that in making her decision, she
reviewed Dr. Ovanessian's treatment notes from 2014 and 2015.
See Tr. 27. This Court has held that where the ALJ "explicitly
considered [the physician's] treatment notes throughout [the
ALJ's] decision[,]" she implicitly considered the treating
source's relationship with plaintiff. Daniel v. Berryhill, No.
3:17CV01015(SALM), 2018 WL 2128380, at *6 (D. Conn. May 9,
2018). As to nature, the ALJ referred to Dr. Ovanessian as "a
treating source who had the opportunity to examine the claimant
and develop a treating relationship." Tr. 30. The ALJ further
noted that Dr. Ovanessian "provided medication management for
the claimant's depression and anxiety[.]" Tr. 26. These
statements by the ALJ demonstrate that she considered the
factors set forth in 20 C.F.R. §416.927(c)(2)(i) and (ii).

Plaintiff also contends that the ALJ did not discuss that
Dr. Ovanessian specialized in "behavioral health treatment."
Doc. #12-2 at 12. "Specialization" is a factor to be considered
under 20 C.F.R. §416.927(c)(5). Plaintiff is correct that the
ALJ did not use these words. However, the Second Circuit does
not require a "slavish recitation of each and every factor where
the ALJ's reasoning and adherence to the regulation are clear."
Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (citing
Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004) (per
curiam)). While the term "specialty" was not used in the ALJ's
decision, the ALJ noted that plaintiff received "psychiatric
care and counseling[]" during his stay at Liberation House,
where Dr. Ovanessian practiced. Tr. 26. As noted above, the ALJ
also expressly described Dr. Ovanessian as providing "medication
management for the claimant's depression and anxiety[.]" Tr. 26.
The ALJ's extensive discussion of plaintiff's psychiatric
treatment and citation to records that reflect Dr. Ovanessian's
specialty further indicate that she was aware of and considered
the specialty in her evaluation. See Cote v. Berryhill, No.
3:17CV01843(SALM), 2018 WL 4092068, at *17 (D. Conn. Aug. 28,
2018) ("The ALJ discussed [the doctor's] psychiatric treatment
and evaluation of plaintiff, see Tr. [26], citing to records
that disclose [the doctor's] specialty, which indicates that he
was aware of that specialty."). For all of these reasons, while

19

the term "specialty" does not appear in the ruling, it is clear that the ALJ considered this factor.

Indeed, the ALJ's ruling makes plain that she adequately considered all of the factors. 20 C.F.R. §416.927(c)(4) states that "the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." Applying this factor, the ALJ concluded that Dr. Ovanessian's opinion was "not wholly consistent with the other evidence of record[.]" Tr. 30. For example, in relation to plaintiff's mood and affect, Dr. Ovanessian wrote "Depression, anxious[.]" Tr. 557 (sic). However, plaintiff's treatment notes from Dr. Ovanessian, and other sources, continuously indicate that he was alert and oriented, and that his affect was appropriate. See, e.g., Tr. 506, 512, 519, 699, 702. The ALJ also found that "Dr. Ovanessian's assessment of the claimant's secondary functional limitations is internally inconsistent." Tr. 30. An ALJ may decline to accord controlling weight to a treating physician's opinion when the opinion contains internal consistencies. See Micheli v. Astrue, 501 F. App'x 26, 29 (2d Cir. 2012). Several internal inconsistencies are indeed apparent in Dr. Ovanessian's opinion. For example, Dr. Ovanessian opined that plaintiff was more limited in carrying out simple instructions than he was in carrying out multi-step instructions. See Tr. 556. Dr. Ovanessian's opinion also states

that plaintiff's functioning in "taking care of personal hygiene" was better than average and that his functioning in "caring for physical needs" was average, Tr. 564, but the opinion twice asserts that plaintiff sometimes looks "disheveled," Tr. 557, 564.

The ALJ also addressed the factor set out in 20 C.F.R. §416.927(c)(3): "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion." The ALJ observed that Dr. Ovanessian's opinion "merely noted what the claimant reported." Tr. 30. Indeed, in response to an inquiry about plaintiff's cognitive status, Dr. Ovanessian replied: "client claims sometimes forgets[.]" Tr. 557. The spaces relating to cognitive testing were left blank, suggesting none was conducted. See Tr. 557. Likewise, in response to the inquiry regarding the reason plaintiff left prior employment, Dr. Ovanessian wrote only: "mood symptoms reported." Tr. 557. Where an opinion relies largely on a plaintiff's self-reports, such an opinion lacks the support required. "An ALJ may properly discount a treating source's opinion where it is based on plaintiff's subjective complaints, as opposed to objective medical evidence." Bautista v. Berryhill, No. 3:18CV01247(SALM), 2019 WL 1594359, at *11 (D. Conn. Apr. 15, 2019) (citation omitted); see also Roma v.

21

<u>Astrue</u>, 468 F. App'x 16, 19 (2d Cir. 2012) (affirming ALJ decision finding "the supportability of Dr. Prywes's opinion was doubtful" under this factor "as it was based largely upon Roma's subjective responses").

Further, as the ALJ noted, "significant portions of the questionnaire were not completed[,]" Tr. 30, including the sections inquiring about psychiatric history (Tr. 559), diagnoses (Tr. 559), mental status or psychological testing (Tr. 557), thought content (Tr. 557), and whether plaintiff was a reliable informant (Tr. 557).

Finally, the ALJ observed that "[t]he opinion of Dr. Ovanessian is remote in time and does not establish a present and complete longitudinal history of the claimant's mental impairment or secondary functional limitations[.]" Tr. 30.

The ALJ's ruling reveals that she properly considered the relevant factors, and properly assigned little evidentiary weight to Dr. Ovanessian's opinion.

*iii. Susan Uber, Ph.D.*

The ALJ gave "great evidentiary weight" to an MRFC assessment completed in June 2015 by Dr. Uber, a state agency psychological consultant. Tr. 29. Plaintiff argues that the ALJ erred in her analysis of Dr. Uber's opinion in three ways. <u>See</u> Doc. #12-2 at 13-14.

First, plaintiff argues that

> Dr. Uber did not review any records after March 20, 2015
> so she did not have a complete picture of the pertinent
> evidence in the record relating to the plaintiff's
> mental impairments. In particular, she did not review
> the behavioral health records from Community Health
> Center from 2016 to 2018, she did not review the treating
> source opinions of Dr. Ovanessian and Ms. Spinella-
> Curto, and she did not examine or treat the plaintiff
> for his mental impairments.

Doc. #12-2 at 13.[7] In response, the Commissioner argues that the

opinion is not stale, because "plaintiff has failed to show that

his condition worsened over time." Doc. #13-1 at 9 (citing

Camille v. Colvin, 652 F. App'x 25, 28 n.4 (2d Cir. 2016)). In

Camille, the Court found that a state agency physician's opinion

was not stale, though it did not take into account treatment

notes and opinions created after the opinion was written,

because "the additional evidence does not raise doubts as to the

reliability of" the agency physician's opinion. Camille, 652 F.

App'x at 28 n.4. Plaintiff suggests that the mere existence of

the additional evidence renders Dr. Uber's opinion of minimal

value. See Doc. #12-2 at 13. Yet, the Camille Court specifically

noted that there is no "unqualified rule that a medical opinion

---

[7] Plaintiff's assertion that Dr. Uber did not review Dr.
Ovanessian's March 3, 2015, opinion is inaccurate. The "evidence
of record" received and reviewed by Dr. Uber includes records
from Liberation House, where Dr. Ovanessian treated plaintiff,
that were received on March 20, 2015. See Tr. 105. Dr. Uber's
report indicates that she reviewed a "Psych: MSQ – Doctor signed
3/15[.]" Tr. 107. The report specifically states: "We have a
partial MSQ on file, signed by treating psychiatrist on 3/3/15."
Tr. 108. Thus, Dr. Uber clearly had, and considered, Dr.
Ovanessian's opinion.

is superseded by additional material in the record[.]" Camille,
652 F. App'x at 28 n.4. Plaintiff here makes no argument as to
why the later created evidence undermines Dr. Uber's opinion.

Dr. Uber completed her opinion on June 9, 2015. See Tr.
110. The evidence from before and after Dr. Uber's opinion did
not differ materially; to the contrary, it was substantially the
same. In support of her opinion that plaintiff was "moderately
limited" in his "ability to maintain socially appropriate
behavior and to adhere to basic standards of neatness and
cleanliness," Dr. Uber wrote that plaintiff "can present as well
groomed/dressed[.]" Tr. 112. Plaintiff's ability to present as
well-groomed continued after Dr. Uber's opinion, as documented
in treatment notes. See, e.g, 699, 702, 705, 766. Dr. Uber also
opined in June 2015 that while plaintiff "reports
forgetfulness," his "mental status indicates good memory" and
that he can "retain/comprehend simple work directives[.]" Tr.
111. The record indicates that in February 2018, plaintiff was
able to successfully complete a mini-mental status examination,
much of which involved memorization, and he had the ability to
follow simple directives. See Tr. 754-56. Additionally, the
treatment notes from before and after Dr. Uber's opinion
indicate that plaintiff was on time and presented himself as
oriented. See, e.g., Tr. 614, 698-99, 701-02, 704-05, 707-08,
710-11, 713-14, 719-20, 722-23, 725-26, 728-29, 731-32, 734-35,

24

737-38, 749, 752, 759-62, 765, 770-71. Therefore, the Court concludes that Dr. Uber's opinion is not stale.

Second, plaintiff asserts that the ALJ erred because "she never explained why she found [Dr. Uber's] opinion to be consistent [with the record]" and that "the ALJ was obligated to explain her reasoning." Doc. #12-2 at 13. The Court finds that the ALJ's basis for assigning great weight to Dr. Uber's opinion is clear. The ALJ discussed the evidence at length before assigning weight to Dr. Uber's opinion. See Tr. 25-30. She was not required to repeat that discussion in the specific context of assigning weight to each opinion. As the ALJ explained, "Dr. Uber provided extensive rationale to support her findings, citing to specific evidence of record and resolving inconsistencies in the record." Tr. 29. "When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that" she go into detail. Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983). Here, the ALJ sufficiently explained her reasoning in her discussion of the opinions and evidence provided. See Tr. 25-31.

Third, plaintiff asserts that the ALJ's reference to "Dr. Uber's alleged vast knowledge of the Social Security Programs and its regulations was not documented by any evidence in the

25

record." Doc. #12-2 at 13.[8] This argument is misplaced. The regulations provide that "Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. §404.1513a(b)(1). "The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record." Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012); see also Little v. Colvin, No. 5:14CV00063(MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015)("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). In sum, state agency consultants like Dr. Uber are expressly considered "experts in the Social Security disability programs[,]" and no special evidence of their expertise is required to treat them as such. SSR 96-6p, 1996 WL 362203 at *34467 (July 2, 1996).

---

[8] Plaintiff asserts in her motion: "In Perez Garcia v. Berryhill, 3:18-cv-986 (WIG), 2019 WL 2022191 at *5 (D. Conn. May 8, 2019), this Court declined to defer to the opinion of a physician who performed a consultative medical examination because there was no evidence in the record that the consultant had an understanding of disability programs and their evidentiary requirements." Doc. #12-2 at 13-14 (emphasis added). This assertion mischaracterizes the ruling in Perez Garcia, which in fact questioned the weight assigned to the state agency physician on multiple grounds.

For the reasons discussed, the ALJ did not err in giving Dr. Uber's MRFC great weight.

Accordingly, the Court concludes that the ALJ did not err in weighing the opinions of Ms. Spinella-Curto, Dr. Ovanessian, and Dr. Uber.

**B. The ALJ's RFC Determination**

Plaintiff's next argument, allocated less than two pages his motion, is that the ALJ erred in determining plaintiff's RFC. See Doc. #12-2 at 14-15.

The ALJ found that plaintiff had the RFC

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to simple, routine tasks assuming normal work breaks over an eight-hour day. The claimant should not interact with the public and he is limited to only occasional superficial contact with supervisors and coworkers.

Tr. 25. Plaintiff argues that (1) the ALJ erred in weighing the opinions of his treating sources when determining the RFC, and (2) "the ALJ failed to acknowledge all of plaintiff's limitations that affected his ability to work on a regular and continuing basis." Doc. #12-2 at 14-15.[9]

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of

---

[9] Plaintiff does not challenge the ALJ's findings with respect to his ability to "perform a full range of work at all exertional levels[.]" Tr. 25; see Doc. #12-2 at 10 ("The plaintiff did not allege he was physically disabled.").

> the extent to which an individual's medically
> determinable impairment(s), including any related
> symptoms, such as pain, may cause physical or mental
> limitations or restrictions that may affect his or her
> capacity to do work-related physical and mental
> activities.

SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence[.]" Id. at *7; accord Cobb v. Astrue, 613 F. Supp. 2d 253, 258 (D. Conn. 2009); Dziamalek v. Saul, No. 3:18CV00287(SRU), 2019 WL 4144718, at *17 (D. Conn. Sept. 3, 2019).

The Court has previously addressed plaintiff's arguments regarding the ALJ's weighing of the medical opinions in the record. See supra Section V.A. The Court finds no error on that basis. The Court therefore turns to plaintiff's next argument.

Plaintiff contends that "the ALJ failed to acknowledge all of plaintiff's limitations that affected his ability to work on a regular and continuing basis." Doc. #12-2 at 15. Plaintiff asserts only that opinions in the record "noted the plaintiff had serious problems sustaining task performance that were not included in the ALJ's RFC finding (Tr. 43, 556, 696)." Doc. #12-2 at 15.[10] No other alleged errors in the RFC are identified.

---

[10] The document at Tr. 43 is a signed copy of the "Colonial Cooperative" form incorporated by Ms. Spinella-Curto into her opinion. The document at Tr. 696 is the unsigned copy of that

The opinions cited by plaintiff in making this argument are the very opinions of Dr. Ovanessian and Ms. Spinella-Curto that the Court has already addressed. The Court has found the ALJ did not err by giving little weight to these opinions, and the Court likewise finds that the ALJ did not err by declining to incorporate some of the limitations suggested by these opinions, which are not supported by the record, into the RFC.

The RFC limits plaintiff to "simple, routine tasks assuming normal work breaks over an eight-hour day." Tr. 25.

Ms. Spinella-Curto's treatment notes repeatedly indicate that plaintiff was alert and oriented during their sessions, suggesting that plaintiff can focus for meaningful periods of time. See, e.g., Tr. 705, 711, 714, 720. Plaintiff was "journaling" at the suggestion of his treaters, on a consistent basis. Tr. 723. He was able to complete a resumé and consider strategies for finding work. See Tr. 702. Plaintiff points to no mention in Ms. Spinella-Curto's treatment notes of inability to concentrate, and the Court sees none. Dr. Uber opined that plaintiff's "ability to complete a normal workday and workweek

---

form. The signed form was provided to the Appeals Council, but was not presented to the ALJ. Plaintiff has not challenged the Appeals Council's determination that this form did not "show a reasonable probability that it would change the outcome of the decision." Tr. 2. In evaluating plaintiff's argument regarding the RFC, the Court considers only the information available to the ALJ when the RFC was formulated.

without interruptions from psychologically based symptoms" was
"[m]oderately limited[,]" but that plaintiff was "capable of
engaging with adequate [concentration persistence and pace] in
simple [routine tasks] up to physical limits on a fulltime
basis." Tr. 111. Ultimately, the RFC determination reflects
these limitations and is supported by substantial evidence in
the record.

Accordingly, the ALJ did not err in making her RFC
determination.

### C. The ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff next argues that "the ALJ failed to weigh the
plaintiff's subjective complaints within the context of SSR 16-
3p." Doc. #12-2 at 15-16. Plaintiff dedicates several pages to
the law on this issue, and makes five separate claims of error
as to the ALJ's credibility determination. However, plaintiff
makes no argument, much less any showing, as to how the RFC
would have been different had the ALJ weighed plaintiff's
subjective complaints differently.

When evaluating subjective complaints, the ALJ must: (1)
"determine whether the individual has a medically determinable
impairment (MDI) that could reasonably be expected to produce
the individual's alleged symptoms[; and (2)] evaluate the
intensity and persistence of an individual's symptoms such as
pain and determine the extent to which an individual's symptoms

30

limit his or her ability to perform work-related activities[.]"
SSR 16-3p, 2017 WL 5180304 at *3-4; see also 20 C.F.R.
416.929(b).

"In addition to using all of the evidence to evaluate the
intensity, persistence, and limiting effects of an individual's
symptoms," the Commissioner considers factors including: (1)
daily activities; (2) the location, duration, frequency and
intensity of a claimant's symptoms; (3) factors that precipitate
and aggravate the symptoms; (4) the type, dosage, effectiveness,
and side effects of medication; (5) treatment other than
medication which the claimant uses; (6) any other measures used
to relive pain or other symptoms; and (7) any other factors
concerning an individual's functional limitations and
restrictions due to pain and other symptoms. SSR 16-3p, 2017 WL
5180304, at *7-8; 20 C.F.R. §416.929(c); see also Doc. #13-1 at
18; Doc. #12-2 at 17.

An ALJ's credibility "decision must contain specific
reasons for the weight given to the individual's symptoms, be
consistent with and supported by the evidence, and be clearly
articulated so the individual and any subsequent reviewer can
assess how the adjudicator evaluated the individual's symptoms."
SSR 16-3p, 2017 WL 5180304, at *10. However, the Second Circuit
has held that an ALJ is not required to discuss all of the
factors where the ALJ explains her determination and the record

supports her rationale. See, e.g., Cichocki v. Astrue, 534 F.
App'x 71, 76 (2d Cir. 2013). "Credibility findings of an ALJ are
entitled to great deference and therefore can be reversed only
if they are patently unreasonable." Pietrunti v. Dir., Office of
Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997)
(quotation marks and citation omitted).

After summarizing plaintiff's subjective complaints, the
ALJ concluded that "the claimant's medically determinable
impairments could reasonably be expected to cause the alleged
symptoms; however, the claimant's statements concerning the
intensity, persistence and limiting effects of these symptoms
are not entirely consistent with the medical evidence and other
evidence in the record for the reasons explained in this
decision." Tr. 26. The ALJ then went on to review the evidence
in the record, including plaintiff's treatment records, medical
opinions, and daily activities, implicitly comparing it to
plaintiff's subjective complaints. See Tr. 26-31. After
reviewing the treatment records in particular, the ALJ found:

> As for the claimant's statements about the intensity,
> persistence, and limiting effects of his ... symptoms,
> they are inconsistent because the medical evidence of
> record does not support the level of incapacity alleged
> by the claimant. The claimant's mental status
> examinations consistently reveal he is punctual, well
> groomed, and alert, despite several substance abuse
> relapses. Providers note the claimant's desire to find
> work and to re-engage in the community. The treatment
> records establish the claimant is able to complete
> memory tasks and reading, writing and copying tasks

along with "3-Stage" command tasks. The medical evidence
of record reasonably supports the above cited residual
functional capacity assessment, but a more restrictive
finding is not supported.

Tr. 29.

"[P]laintiff asserts that the record did not support the
ALJ's analysis of his subjective complaint[s]" for five reasons:
(1) "since the ALJ failed to properly weigh the treating source
medical opinions, as explained in plaintiff's first argument,
the ALJ's assessment of the plaintiff's subjective symptoms
cannot stand[;]" (2) "the ALJ highlighted the plaintiff's
punctuality, alertness and good grooming but as argued above,
she ignored many of the serious clinical signs and symptoms that
supported the severity of plaintiff's mental impairments[;]" (3)
"the plaintiff's desire to work is just that, a 'desire'[;]" (4)
"the ALJ should have weighed the plaintiff's medication regimen
in considering his subjective complaints[;]" and (5) "the ALJ
never discussed why the plaintiff's activities of daily living
did not support his subjective complaints as required under SSR
16-3p." Doc. #12-2 at 19-20.

The Court previously concluded, see supra Section V.A.,
that the ALJ properly weighed the medical opinions in this case.
Therefore, the Court begins with plaintiff's second argument.

Plaintiff asserts that the ALJ essentially "cherry-picked"
which medical evidence to consider in discounting his subjective

complaints. See Doc. #12-2 at 19.[11] The Court disagrees.
Plaintiff specifically complains that the ALJ "cited results
from the MMSE showing normal cognitive behavior but ignored
results from the PHQ9 and GAD7 assessments showing severe
depression and severe anxiety." Doc. #12-2 at 19. But the ALJ
need not cite all evidence; it is well-established that "[a]n
ALJ's failure to cite specific evidence does not indicate that
such evidence was not considered." Brault v. Soc. Sec. Admin.,
Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (citation and quotation
marks omitted). Furthermore, the ALJ expressly found depression
and anxiety to be severe impairments, and discussed these
conditions at length. See Tr. 22, 26. The ALJ also discussed how
plaintiff's symptoms fluctuated over time, but overall were
consistently within normal limits. See Tr. 28. "It is the role
of the [ALJ], not the reviewing court, to resolve evidentiary
conflicts and to appraise the credibility of witnesses,

---

[11] In support of this argument, plaintiff again cites to White v.
Berryhill, 2018 WL 2926284, at *1. White is again inapposite.
There, the Court was considering an ALJ's selective adoption of
"portions of the consultative examiners' opinions" for which the
ALJ "did not provide sufficient explanations[.]" White, 2018 WL
2926284, at *7. The issue before the White Court was the weight
attributed to examiners' opinions. Here, the ALJ appropriately
pointed to evidence supporting her conclusions; she had no
obligation to point to evidence that might have supported an
alternate conclusion. "[A]n ALJ is not required to discuss all
the evidence submitted[.]" Barringer v. Comm'r of Soc. Sec., 358
F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (citations and quotation
marks omitted).

including with respect to the severity of a claimant's symptoms." Cichocki, 534 F. App'x at 75 (citation and quotation marks omitted). Accordingly, the Court finds the ALJ fairly considered the evidence of record.

Plaintiff next asserts that "[a]n aspiration to work does not necessarily translate into an ability to work." Doc. #12-2 at 20. In support of this assertion, plaintiff cites Janangelo v. Berryhill, 3:16CV01496(WIG), 2018 WL 4501209 at *5 (D. Conn. Sept. 19, 2018). The actual language of Janangelo, however, not quoted by plaintiff, reveals that case to be distinguishable. In Janangelo, the Court found: "While he may have had an aspiration to return to work, the records from the relevant time period, read in light of Dr. Panoor's opinions, simply do not suggest that he could." Janangelo, 2018 WL 4501209, at *5. Here, in contrast, plaintiff had an aspiration to return to work, and the records from the relevant time period, particularly when read in light of Dr. Uber's opinion, suggest that he could.

Fourth, plaintiff asserts that "[t]he ALJ should have weighed the plaintiff's medication regimen in considering his subjective complaints." Doc. #12-2 at 20. Plaintiff contends that "[d]espite being prescribed Buspirone, Bupropion, Pristiq, Trazodone, Zolpidem, Clonazepam, and Abilify for his depression and anxiety (Tr. 689-691), the plaintiff experienced serious, chronic symptoms of his impairments." Doc. #12-2 at 20. In

35

response, the Commissioner asserts that "plaintiff did not require more powerful anti-psychotic medication to manage his symptoms[.]" Doc. #13-1 at 15. The Commissioner contends that "plaintiff's treatment had been entirely conservative" in the sense that "[p]laintiff did not require inpatient admissions or emergency room visits, but merely medication and therapy." Doc. #13-1 at 15. Conservative treatment, consisting of medication management, weighs against a finding of disability. See, e.g., Penfield v. Colvin, 563 F. App'x 839, 840 (2d Cir. 2014); Shaffer v. Colvin, No. 1:14CV00745(MAT), 2015 WL 9307349, at *5 (W.D.N.Y. Dec. 21, 2015). Notably, plaintiff himself admitted during the hearing that his medication helped with his depression symptoms. See Tr. 56. The ALJ clearly considered plaintiff's medication regimen, discussing plaintiff's medication management by Dr. Ovanessian and the positive results plaintiff had with Dr. Ovanessian's assistance. See Tr. 26-27. The Court finds no error on this point.

Finally, plaintiff asserts that "there was nothing in the treatment notes or [plaintiff's] testimony that indicated [plaintiff's] activities of daily living were representative of an ability to work on a regular and continuing basis." Doc. #12-2 at 20. A plaintiff's activities of daily living are relevant.

> [T]he law is clear that the ALJ may consider ... [a claimant's] purported activities of daily living for the purposes of a credibility determination." Cahill v.

36

<u>Astrue</u>, No. 1:11CV00148(JMC), 2012 WL 3777072, at *5 (D.
Vt. Aug. 29, 2012). Indeed, the Commissioner's
regulations expressly identify "daily activities" as a
factor the ALJ should consider in evaluating the
intensity and persistence of a claimant's symptoms. 20
C.F.R. § 416.929(c)(3)(i). In considering activities
of daily living, "[t]he issue is not whether the clinical
and objective findings are consistent with an inability
to perform all substantial activity, but whether
plaintiff's statements about the intensity, persistence,
or functionally limiting effects of his symptoms are
consistent with the objective medical and other
evidence." <u>Morris v. Comm'r of Soc. Sec.</u>, No.
5:12CV01795(MAD)(CFH), 2014 WL 1451996, at *6 (N.D.N.Y.
Apr. 14, 2014). This is so because "[o]ne strong
indication of credibility of an individual's statements
is their consistency, both internally and with other
information in the record." <u>Id.</u>

<u>Coger v. Comm'r of Soc. Sec.</u>, 335 F. Supp. 3d 427, 436 (W.D.N.Y.

2018). Dr. Ovanessian's opinion, to which plaintiff claims the

ALJ should have assigned <u>more</u> weight, indicated that plaintiff's

functional abilities were generally average or better than

average in activities of daily living, with a reduced ability

only in "[u]sing appropriate coping skills." Tr. 558; <u>see also</u>

Tr. 28 (ALJ's discussion of this portion of Dr. Ovanessian's

opinion). Furthermore, plaintiff <u>himself</u> reported in March 2018

that he had no impairment in activities of daily living. <u>See</u> Tr.

746 (March 20, 2018, behavior health systems assessment report

by Ms. Spinella-Curto).

     The Court concludes that the ALJ's determination that

plaintiff's subjective complaints were not consistent with the

record is supported by substantial evidence. "[W]here the ALJ's

decision to discredit a claimant's subjective complaints is supported by substantial evidence, [the court] must defer to [her] findings." Calabrese v. Astrue, 358 F. App'x 274, 277 (2d Cir. 2009) Accordingly, the ALJ did not err in her evaluation of plaintiff's subjective complaints.

### D. The ALJ's Evaluation of Plaintiff's Past Relevant Work and Other Work in the National Economy

Finally, plaintiff argues that the ALJ erred in her finding that "plaintiff could perform his past relevant work as a stores laborer[,]" Tr. 31, and that "plaintiff could perform other work in the national economy such as a commercial cleaner, a salvage laborer, and a merchandise marker (Tr. 32)." Doc. #12-2 at 21.

Plaintiff asserts that his prior work as a stores laborer "did not meet the definition of past relevant work" because "plaintiff's earning record within the past 15 years does not indicate that he performed any work at the [substantial gainful activity] level (Tr. 201)." Doc. #12-2 at 21; see also Tr. 200-14. The Commissioner concedes that "it is not clear whether [plaintiff's] earnings were at the substantial gainful level because it is not clear how many months in 2013 and 2014 plaintiff had worked." Doc. #13-1 at 17.

A claimant's past relevant work is defined as work that was "done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." 20 C.F.R.

§416.965. To be considered substantial gainful activity in 2013, a claimant's monthly income must have been at least $1,040. See Substantial Gainful Activity, Social Security Administration, https://www.ssa.gov/oact/cola/sga.html (last visited May 27, 2020). While the record indicates that plaintiff earned $1,611.41 in 2013, see Tr. 205, it does not disclose how many months plaintiff worked in 2013. Without this information, the Court cannot determine whether plaintiff met the threshold for substantial gainful activity. See Donaldson v. Colvin, No. 12CV00528(WMS), 2013 WL 5943925, at *4 (W.D.N.Y. Nov. 5, 2013) (Court could determine if plaintiff met the threshold for substantial gainful activity where the annual amount earned and number of months of work completed by plaintiff was in the record.); see also Vanbenschoten v. Comm'r of Soc. Sec., No. 1:16CV00057(GTS), 2017 WL 1435741, at *6 n.2 (N.D.N.Y. Apr. 21, 2017). Accordingly, the ALJ erred when she found that plaintiff had past relevant work.

However, as the Commissioner argues, even if "the ALJ's step four finding is unsupported, remand is not required because the ALJ made an alternative finding, at step five, that [plaintiff] could do other work, and that finding is supported by substantial evidence." Doc. #13-1 at 17. Thus, any error at step four "does not require remand because the outcome on remand would not change." Doc. #13-1 at 17.

In many cases, where an ALJ has incorrectly determined
that a plaintiff is not disabled because he or she can
perform past relevant work, such an error has been found
harmless if the ALJ then makes proper findings at step
5 of the five-step disability analysis. <u>Lopez v.
Astrue</u>, No. 1:11CV00310(GSA), 2012 WL 1434991, at *15
(E.D. Cal. Apr. 25, 2012) ("even if the ALJ erred in
determining Plaintiff could perform his past relevant
work because that work did not amount to substantial
gainful activity, any error is harmless" where the ALJ's
determination at step five is correct); <u>Johnson v.
Astrue</u>, No. 07CV00647(MAT), 2009 WL 1650415, at *6
(W.D.N.Y. June 12, 2009) (explaining that failure to
properly examine past relevant work is harmless when
ALJ makes a correct ruling at step five)[.]

<u>Corbeil v. Colvin</u>, No. 12CV00114(MAT), 2015 WL 1735089, at *6

(W.D.N.Y. Apr. 16, 2015). The Court thus proceeds to consider

the ALJ's alternative step five determination.

Plaintiff contends that "[s]ince the ALJ did not supply the

VE with all of the plaintiff's functional limitations in his

hypothetical posted to the VE, [the ALJ] could not rely on the

VE's testimony to find there were jobs in the national economy

that the plaintiff could perform." Doc. #12-2 at 22. This is

merely a reframing of plaintiff's previous argument regarding

the RFC determination. When an ALJ's RFC determination is

supported by substantial evidence, the ALJ may rely on the VE's

response to the hypothetical posed based on that RFC. <u>See

Salmini v. Comm'r of Soc. Sec.</u>, 371 F. App'x 109, 114 (2d Cir.

2010); <u>see also McIntyre v. Colvin</u>, 758 F.3d 146, 150 (2d Cir.

2014); <u>Mancuso v. Astrue</u>, 361 F. App'x 176, 179 (2d Cir. 2010).

During the hearing, the ALJ posed multiple hypotheticals to the

VE regarding plaintiff's past relevant work and other work in the national economy. Tr. 65-67. These hypotheticals required the VE to apply restrictions that appeared in the ultimate RFC determination. See Tr. 65 ("[A]ssume that ... this person is limited to work involving simple routine taks, assuming normal work breaks over an eight-hour day. This person should not have interaction with the public, and is limited to occasional superficial contact with workers and supervisors."). The Court has found that the RFC determination is supported by substantial evidence. Therefore, the ALJ appropriately relied on the VE's testimony at step five.

Accordingly, while the ALJ erred in finding that plaintiff had past relevant work, the error is harmless. Remand is not required because the ALJ properly found, in the alternative, that plaintiff can perform other work in the national economy.

## VI.   <u>CONCLUSION</u>

For the reasons set forth herein, plaintiff's Motion to Reverse the Decision of the Commissioner **[Doc. #12]** is **DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #13]** is **GRANTED**.

It is so ordered at New Haven, Connecticut, this 31st day
of May, 2020.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE